## J. B. Sherman and H. C. Johnston, partners as Sherman & Johnston, *v.* James M. Thompson, Appellant.

*Mechanics' liens—Oil leases—Personal property of lessees liable—Other property exempt.*

The local Act of March 7, 1873, P. L. 219, conferring the right to file mechanics' liens against certain leasehold interests and personal property thereon, applies to such leasehold estates and to personal property and fixtures thereon of the lessees. It does not, in terms or by necessary implication, extend to the property of strangers whether on or off the premises.

Argued May 9, 1898. Appeal, No. 73, April T., 1898, by defendant, from judgment of C. P. Butler Co., Sept. T., 1897, No. 94, on verdict for plaintiffs. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Replevin. Before GREER, P. J.

Plaintiff firm brought an action in replevin to recover one engine which they claim to be of the value of $150. This engine was sold at sheriff's sale on mechanic's lien filed under the special law applicable to Butler county, and bought by the attorney for the claimants against the rig and lease, and also attorney for the defendant in this case. Plaintiff claimed that at the sale he gave notice to the defendant that the engine belonged to them, and that any one who bought it would buy a lawsuit; that they never sold the engine; that they had leased it at $25.00 to drill a well where this well was drilled, and that they had an arrangement by which the owners of the lease could, if they desired when the well came in, buy the engine at $150. They claim that the title to the property remained in them; that they had not parted with it; and at the time of the sale, parties who leased it had not come to them and completed the sale.

The defendant presented the following points which were reserved by the court as points of law, with a right to enter judgment in favor of the defendant, notwithstanding the verdict:

1. The proceeding on sci. fa. sur mechanic's lien is strictly in rem, and if the jury believe from the evidence, that the plaintiffs in the mechanics' liens in this case performed the manual labor claimed for in developing the lease, they had a lien on the personal property and fixtures at said well and on the lease itself for the work and labor done by them, and a sale regularly made by the sheriff on judgments obtained on mechanics' liens filed by the men who did the work, gave the purchaser good title to the leasehold, machinery and fixtures thereon, and the verdict should be for the defendant.

2. If the jury believe from the evidence that the plaintiffs in the several mechanics' liens filed, without notice that the plaintiff was claiming the engine in this case, performed the

manual labor on the well and leasehold developing the same, as set out in the several liens against the property, the plaintiff could not defeat their right to recover their wages by giving notice at the sheriff's sale that he had only leased the engine to the owners of the leasehold, and the verdict should be for the defendant.

3. If the jury believe from the evidence that Sherman & Johnston made an arrangement with George P. Umpstead, one of the owners of the leasehold and agent for the other owners, by which they let him have the engine in dispute with which to drill the well and the conditions were, that Umpstead was to use the engine, and if he kept it pay $125 and pay the difference for the use of it, this was a conditional sale, and creditors without notice could levy upon and sell the engine for debts contracted in developing the leasehold, and the verdict should be for the defendant. *Answer:* If the jury find that there was an absolute sale, affirmed.

4. If the jury believe from the evidence that the proceedings on the several mechanics' liens filed against the property on said leasehold, including the engine in dispute, were regular, judgment obtained, levari facias issued and sale regularly made by the sheriff, the validity of the sale cannot be attacked in a collateral proceeding like this, and the verdict should be for the defendant. *Answer:* The question of law raised by the above point reserved for further examination, with the right to enter judgment in favor of the defendant, notwithstanding the verdict.

The question was left to the jury as one of fact, subject to reserving the question whether, if the jury believe from the evidence that the proceedings on the several mechanics' liens filed against said property on said leasehold, including the engine in dispute, were regular, judgment obtained, levari facias issued, and sale regularly made by the sheriff, the validity of the sale cannot be attacked in a collateral proceeding like this. The jury filed a verdict for plaintiff for $120, subject to the question reserved by the court, who subsequently entered judgment on the verdict in favor of the plaintiff. Defendant appealed.

*Errors assigned* were (1–4) refusal of defendant's points,

reciting same.    Other assignments raised error in not instructing the jury that the engine having been left with the owners of the leasehold, either on rental or conditional sale, it was subject to the mechanic's lien law and could be taken and sold thereunder, and in leaving the question to the jury as one of fact whether the engine was held by the owner of the leasehold, under rental or by virtue of a conditional sale.

*Newton Black*, with him *Alex. Russell*, for appellant.—The proceedings on the liens were strictly in rem, and cannot be attacked in a collateral proceeding like this : Shryock v. Buckman, 121 Pa. 248.

*J. M. Galbreath* of *McJunkin & Galbreath*, for appellee.— A loan of personal property, subject to be turned into a sale by compliance with certain conditions, does not vest in the bailee such an ownership as subjects the property to levy and sale on execution for his debt: Clark v. Jack, 7 Watts, 375 ; Chamberlain v. Smith, 44 Pa. 431 ; Wheeler & Wilson v. Heil, 115 Pa. 487.

In the present case there was no obligation on the part of Umpstead, Breaden & Co. to purchase or keep the engine ; it was altogether optional with them.    The legislature has no power to authorize the sale of the property of parties sui juris, and seized of a vested estate therein against their consent: Hagarty's Appeal, 75 Pa. 503, 517 ; Wolford v. Morgenthal, 91 Pa. 30, 46 ; Palairet's Appeal, 67 Pa. 479.

But we are not without authority that even in judgments in rem, those alone are concluded thereby who have been parties thereto or who have had notice and an opportunity to defend. A judgment on a scire facias on a mechanic's lien is analogous to a judgment on a scire facias on a mortgage, in that both are judgments in rem, and, so far as their conclusiveness is concerned, they are governed by the same authorities : Nace v. Hollenback, 1 S. & R. 540 ; Mather v. Clark, 1 Watts, 491.

OPINION BY SMITH, J., July 29, 1898 :

This action of replevin was brought to recover a portable steam engine, used in the work of developing and testing certain territory for oil and gas, while held under a demise for that

purpose. Under a special act relating to Butler county, certain workmen who had been employed in the work filed mechanics' liens for their wages against the leasehold and the personal property thereon, including the engine in question, and obtained judgments. Executions were issued on these upon which the sheriff sold the engine. The purchaser subsequently transferred his title to the appellant. The plaintiffs were not made parties to those proceedings, but notice of their claim was duly given at the sheriff's sale.

Two questions arose at the trial: first, whether the plaintiffs had parted with the engine under a lease or under a contract of sale; second, whether, under the act, a mechanic's lien attached to the property in dispute, regardless of the actual ownership. The evidence as to the lease or sale rested entirely in parol. The court submitted this question to the jury, who found a verdict in favor of the plaintiffs. This finding that the agreement was a lease and not a sale, either absolute or conditional, was fully warranted by the evidence. The second question was reserved by the court as a question of law, and was disposed of by entering judgment on the verdict for the plaintiff.

The principal question for our consideration involves the construction of the local Act of March 7, 1873, P. L. 219, and especially the second section. This section is as follows : " That all persons doing work for, on or about the erection, construction or repair of any engine, engine house, tanks, derrick, building, machinery, wood or iron improvement, erected, constructed or repaired upon any leasehold estate as aforesaid, or for boring, drilling or mining on said lease or lot for the development or improvement of the same, whether such labor is or may be done by the day, month or year, or by contract for the tenant or tenants, lessee or lessees of such lot or lease of parcel of land, or for their use and benefit, shall have a lien upon the personal property and fixtures on said lot or lease of ground, and upon such lot or leasehold itself for the price and value of such work and labor: Provided, That such lien shall extend as to said labor leasehold only to the interest of the tenant or tenants, lessee or lessees therein, and nothing herein shall be so construed as to prevent laborers and mechanics from enjoying the privileges hereby granted as against the lessees or tenants of the like estates for any other purpose than that of the development of oil."

.It may be conceded that the subject of the statute is within the legislative power; we do not deem it necessary to discuss that question. It is undoubtedly true that the legislature had no constitutional power to take or through the operation of a lien to appropriate one man's property to the payment of another's debts. We think, however, the act may be construed in harmony with this principle. Our first duty is to ascertain the legislative meaning through the established rules of construction, and, if it contravenes no constitutional mandate, to apply our interpretation to the case at issue. We must discover the legislative intention from the light which the act itself furnishes, if that can be done: Dame's Appeal, 62 Pa. 417. The contention of the appellant is that, under the section quoted, the personal property on the premises, used in the work of development, is subject to a lien, although owned by a stranger who has no interest whatever in the project; that as the proceeding is in rem the lien binds the property, and the execution follows the judgment, into which the lien has been merged.

To this broad proposition we cannot assent. It is not to be presumed that the legislature intended to subject property to seizure and sale for the debts of those who are strangers to its title and who have acquired no right to pledge it therefor. There is nothing in the act or in its title indicating an intention to affect the rights of persons not interested or connected with the subject-matter of the statute. It was evidently the legislative purpose, as indicated by the second section, to subject leaseholds and the property thereon of lessees, tenants and persons having an interest in the operations, to the claims of persons employed in the work, when such operations are conducted under a demise of the premises; because leaseholds and personal chattels were not within the purview of the general mechanic's lien laws, nor theretofore made subject to them by act of assembly.

The contention of the appellant, briefly stated, is, that the statute gives a lien upon all the personal property and fixtures on the leasehold and upon the leasehold itself for the price or value of the labor; that this creates two distinct liens, one on all the personal property and fixtures used in the work of development, and the other on the leasehold; that by the proviso the lien on the leasehold is limited to the interest of the lessees

or tenants therein, while that against the personalty and fixtures is unrestricted, and covers all property on the premises and used in the business. In this proviso, which consists of a single sentence, it is also stated that nothing therein shall be so construed as to prevent laborers and mechanics from enjoying the privileges granted " as against the lessees or tenants of the like estates for any other purpose than that of the development of oil." Evidently this refers to the property and the rights of lessees and tenants and of persons operating for their use. The broad construction contended for would subject the tools of one employee to the lien of a coemployee. Clearly it does not include the property of persons who are not tenants or lessees, and who are not interested in the business of boring, drilling or mining on the leasehold. An intention to appropriate one man's property for the debt of another should at least be clearly expressed. It is not to be presumed or inferred from doubtful language. Nor is it to be assumed that the legislature intended to make so important a qualification of the law of bailments by the inexplicit and indefinite language relied upon. If it was intended by this act to extend the lien to all personal property on the premises or to all property thereon and used in the development of the territory, without regard to its ownership, this could have been readily and aptly stated. Under the proviso the scope of the act is restricted in its operation to lessees and tenants of leasehold estates and to persons conducting the work for their use and benefit. The reference to " the development of oil," might suggest that this was the main subject of the statute, but there is nothing in its provisions further than this, to warrant that view. Read in connection with the proviso the act applies to certain leasehold estates and to the personal property and fixtures thereon of the lessees and tenants, and, possibly, of contractors and persons beneficially interested in the operations; as to the latter it is now unnecessary to decide. It does not, in terms or by necessary implication, extend to the property of strangers whether on or off the premises.

The obvious purpose of the act was to extend the protection of the mechanic's lien law to persons employed in the development of the leasehold estates therein described, and to afford them the right to file a lien against the leasehold and the property and fixtures thereon of the lessees and tenants, and, possibly,

to the like property of those who are interested in the enterprise. This construction gives consistent effect to the entire act, without conflicting with any part of the proviso.

There was no evidence in the case to show a conditional sale of the engine; if the contention of the defendant were true the alleged condition did not apply to the sale, but to the right to return the property thereafter at a certain price. The testimony of the witnesses for the defendant was equivocal as to whether the transaction was a sale with the right to return the engine, or a lease; but nothing was testified to by any witness which tended to show a conditional sale. This question was fairly submitted to the jury in the light of the evidence and their finding, which accords with the clear weight of the evidence, may be accepted as conclusive on the point. It is unnecessary to consider the specifications in detail, what has been said substantially answers them all; they are overruled, and the judgment is affirmed.

*Mechanics' liens—Oil leases—Personal property of lessees liable—Other property exempt.*

The local Act of March 7, 1873, P. L. 219, confirming the right to file mechanics' liens against certain leasehold interests and personal property thereon, applies to such leasehold estates and to personal property and fixtures thereon of the lessees. It does not, in terms or by necessary implication, extend to the property of strangers whether on or off the premises.